# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37707-2010

| | |
|---|---|
| ) | **Coeur d'Alene, November 2010 Term** |
| ) | |
| **IN THE MATTER OF TERMINATION OF THE PARENTAL RIGHTS OF JANE DOE 2009-19.** ) | **2010 Opinion No. 116** |
| ) | **Filed: November 24, 2010** |
| ) | |
| ) | **Stephen W. Kenyon, Clerk** |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. The Hon. Robert Caldwell, Magistrate Judge.

The judgment of the magistrate court is <u>affirmed</u>.

Kootenai County Public Defenders Office, Coeur d' Alene, for appellant. Sarah Sears argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Denise Rosen argued.

_____

EISMANN, Chief Justice.

This is an appeal from a judgment terminating parental rights due to the mother's neglect and inability to discharge her parental responsibilities as a result of her addiction to methamphetamine. We affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

On March 14, 2008, the Kootenai County prosecutor filed a petition under the Child Protective Act, Idaho Code §§ 16-1601 to 16-1643, concerning the infant daughter (Child) of Jane Doe (Mother). Pursuant to Idaho Code § 16-1611(4), the prosecutor sought in the summons an order that Child be removed and placed in shelter care. The affidavit in support of the order for removal stated: that Mother tested positive for methamphetamine on the day of Child's birth;

that Mother was homeless and was "couch hopping"; that Mother was leaving Child in the care of "numerous individuals in the Methamphetamine community"; that Mother was arrested on March 2, 2008, for the felony charge of possession of methamphetamine with the intent to deliver; and that Mother had not taken Child to her pediatric appointments since being discharged from the hospital. Mother and Child were located, and Child was taken into custody.

On March 18, 2008, the trial court held a shelter care hearing at which Mother was present and was represented by counsel. The court found that there was reasonable cause to believe that Child was within the purview of the Child Protective Act due to an unstable home environment. The court ordered that Child be placed in the temporary legal custody of the Idaho Department of Health and Welfare (Department).

After Child was taken into custody, a hair follicle test showed that there was methamphetamine in her system. A social worker also testified that she was exhibiting symptoms consistent with withdrawal from that drug.

On April 18, 2008, the court held an adjudicatory hearing at which Mother was present and represented by counsel. Based upon stipulation of all concerned, including Mother, the court found that Child was subjected to an unstable home environment; that reasonable efforts were made but were not successful in eliminating the need for the placement of Child in foster care; and that it was in Child's best interests to have her legal custody vested in the Department.

On May 15, 2008, the court held a case plan hearing at which Mother was present with her counsel. At that hearing, Mother stipulated to a case plan that was intended to assist her in achieving reunification with Child. The plan required, among other things, that Mother successfully complete inpatient substance abuse treatment; that she participate in random drug testing; that she not frequent places of drug use or associate with past drug-using friends; that she attend community-based self-help recovery groups; that she receive a mental health assessment from a designated psychiatrist and that she follow his recommendations; that she complete a parenting class; that she not engage in illegal activities; and that she acquire stable housing and employment.

On September 10, 2008, the court held another case plan hearing. Based upon information set forth in a report dated August 27, 2008, which was incorporated by reference into the court's order but not included in the record on appeal, the court found that Department had made reasonable efforts to eliminate the need to have Child in foster care, but such efforts

2

were unsuccessful. The court also found that it was in Child's best interests to remain in the custody of Department in order to give Mother time to complete the case plan and to provide a stable home environment for Child.

On December 9, 2008, the court held a third case plan hearing. Mother's counsel was present at the hearing, but Mother was absent. Based upon reports dated December 2 and 3, 2008, which were incorporated by reference into the court's order but not included in the record on appeal, the court found that Department had made reasonable efforts to eliminate the need for placement of Child in foster care, but it was in Child's best interests to remain in Department's custody. The court also ordered Department to prepare a written permanency plan.

On March 10, 2009, the court held a hearing regarding Department's permanency plan. Mother did not attend the hearing, but her counsel was present. The court approved the permanency plan "for termination of parental rights without the need for reunification efforts including visitation." That order was based upon information in reports dated February 24, 2009, and March 2, 2009, which were incorporated by reference into the order but not included in the record on appeal. The court scheduled a review hearing to determine whether any modifications need to be made to the permanency plan and ordered the Department to file proceedings to terminate Mother's parental rights by April 10, 2009.

On February 6, 2009, Mother pled guilty to her pending criminal charge, and she entered drug court. Although she had some initial issues in complying with drug court requirements, the court found: "Since March, 2009, she has greatly improved showing signs of compliance with her drug court requirements. To her credit, she is now involved with treatment again and seems to be doing much better."

On March 24, 2009, Department filed a petition to terminate the parent and child relationship between Mother and Child. On June 15, 2009, Mother filed an answer denying the alleged grounds for termination and asking that the petition be dismissed.

The matter was tried on October 16 and 30, 2009. On November 3, 2009, the court issued its decision, finding that Mother had neglected Child and was unable to discharge her parental responsibilities and that it was in Child's best interests to terminate Mother's parental rights. It ordered that the parent-child relationship between Mother and Child be terminated. Mother timely appealed to this Court.

This appeal was initially assigned to the Idaho Court of Appeals. It issued an opinion on March 30, 2010, affirming the judgment terminating Mother's parental rights, and she filed a petition for review with this Court. We granted the petition and then heard the appeal anew.

## II. ISSUES ON APPEAL

A. Was the trial court's finding that Mother had not complied with her case plan supported by substantial and competent evidence?

B. Was the trial court's finding that Department had made reasonable efforts to reunite Mother and Child supported by substantial and competent evidence?

C. Was the trial court's finding that termination was in Child's best interests supported by substantial and competent evidence?

## III. ANALYSIS

"The trial court must find that grounds for terminating parental rights have been proved by clear and convincing evidence." *Department of Health and Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010). "Whether a matter has been proved by clear and convincing evidence is primarily a matter for the trial court." *Id*. On appeal, we will not disturb the trial court's findings of fact if they are supported by substantial and competent evidence. *Id*.

## A. Was the Trial Court's Finding that Mother Had Not Complied with Her Case Plan Supported by Substantial and Competent Evidence?

Pursuant to Idaho Code § 16-2005(1)(b), a court may grant an order terminating parental rights if it finds that such termination is in the child's best interests and that one of the statutory conditions for termination exists. The trial court found that three statutory conditions existed, which were:

> A. The Mother has neglected the Child as defined in I.C. §16-102(25);
> B. The Mother has neglected the Child because the Mother has failed to comply with the Court's Order in a child protective act case or the case plan, and reunification of the Child with the parents has not occurred within the time standards set forth in I.C. §16-1629(9) and;
> C. The Mother is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child. (Footnote omitted)

4

First, pursuant to Idaho Code § 16-2005(1)(b), one condition authorizing termination is that "[t]he parent has neglected . . . the child." The court found that "Mother has neglected the Child as defined in I.C. §16-102(25)." The court's reference to section 16-102(25) is apparently a typographical error. It undoubtedly meant to refer to section 16-1602(25). The definition of "neglected" in Idaho Code § 16-2002(3) includes "[c]onduct as defined in section 16-1602(25), Idaho Code." Idaho Code § 16-2002(3)(a).

Section 16-1602(25) defines "neglected" as a child:

> (a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them; however, no child whose parent or guardian chooses for such child treatment by prayers through spiritual means alone in lieu of medical treatment shall be deemed for that reason alone to be neglected or lack parental care necessary for his health and well-being, but this subsection shall not prevent the court from acting pursuant to section 16-1627, Idaho Code; or
> (b) Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being; or
> (c) Who has been placed for care or adoption in violation of law; or
> (d) Who is without proper education because of the failure to comply with section 33-202, Idaho Code.

When finding that Mother had neglected Child as defined in section 16-1602(25), the court was apparently referring to subsection (a) of that statute, since it separately found to exist the condition described in subsection (b), and subsections (c) and (d) would not be applicable to this case. Mother has not directly challenged on appeal the conclusion that she neglected Child as defined in Idaho Code § 16-1602(25)(a). However, that conclusion was apparently based upon Mother's failure to stop using methamphetamine and associating with known drug users from Child's birth until she was about one year old. The conclusion that Mother neglected Child as defined in section 16-1602(25) would have had at its root Mother's lack of progress in overcoming her methamphetamine addiction, which would be related to her compliance with her case plan.

Second, "Neglected" is also defined as, "The parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9), Idaho Code." Idaho Code § 16-2002(3)(b).

5

The trial court found that "Mother has neglected the Child because the Mother has failed to comply with the Court's Order in a child protective act case or the case plan, and reunification of the Child with the parents has not occurred within the time standards set forth in I.C. §16-1629(9)." (Footnote omitted.) The statute requires both the failure to comply with the case plan and the failure to achieve reunification "within the time standards set forth in section 16-1629(9), Idaho Code."

The time standards set forth in Idaho Code § 16-1629(9) are that the "child [wa]s placed in the custody of the department and was also placed in out of the home care for a period not less than fifteen (15) out of the last twenty-two (22) months from the date the child entered shelter care."[1] We have not addressed what the statutory time standard is for reunification to have failed to occur in order to find the existence of neglect as defined in section 16-2002(3)(b). Consistent with the statutory philosophy "that wherever possible family life should be strengthened and preserved," Idaho Code § 16-2001(2), and the wording of Idaho Code § 16-1629(9), we hold that the statutory time standard for reunification to have failed is twenty-two months from the date the child entered shelter care. In this case the court ordered that Department could cease "reunification efforts including visitation" about twelve months after Child entered shelter care. The Department social worker assigned to this case testified that ceasing reunification efforts meant that Department would continue to provide services to the family but there would be no visitation with the child. Mother has not challenged on appeal the Court's finding that "reunification of the Child with the parents has not occurred within the time standards set forth in I.C. §16-1629(9)," nor has she challenged the trial court's order that Department could cease reunification efforts about twelve months after Child had entered shelter care.

Third, "neglected" is also defined as referring to a child "[w]hose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being." Idaho Code §§ 16-2002(3)(a) and 16-1602(25)(b). The trial court found, "The Mother is unable to discharge parental responsibilities and such inability will continue for a prolonged

---

[1] At the time the petition to terminate was filed, Child had been in foster care for only about twelve months, not fifteen. However, by the completion of the trial, Child had been in foster care for about nineteen months. The trial court found that "Child has been in the care and custody of the Department of Health and Welfare for at least 15 of the last 22 months." Twenty-two months before the magistrate issued his decision would have been about three weeks prior to Child's birth.

6

indeterminate period and will be injurious to the health, morals or well-being of the child." Mother has not directly challenged this finding on appeal. However, as with the finding of neglect as defined in Idaho Code § 16-1602(25)(a), this finding of neglect would have had at its root Mother's lack of progress in overcoming her methamphetamine addiction, which would be related to her compliance with her case plan.

Mother's case plan set forth eight areas of concern, the desired result with respect to each of those concerns, and tasks that Mother was to accomplish in order to achieve those results. The trial court found that Mother had failed to complete timely or at all the tasks related to four areas of concern. Mother contends that such findings are not supported by substantial and competent evidence.

The first area of concern stated in Mother's case plan was that she had a history of addiction to methamphetamine. Mother had begun using methamphetamine when she was about fourteen years old. She testified that during the fourteen ensuing years, there were only two periods of time when she did not use the drug. She did not use for one year when she was with a good crowd of people, and she did not use for three years while on probation for a 2001 conviction of possessing methamphetamine. The plan stated as a desired result that she "become a sober healthy productive member of society, which will enable her to parent [Child] in a responsible and prudent manner." In order to achieve that result, Mother was to successfully complete the inpatient counseling she had started and any continuing care that the treatment provider deemed necessary, to participate in random drug testing, and to not frequent places of drug use or associate with past drug-using friends.

The trial court found that Mother "did not complete substance abuse treatment as required under the case plan," "failed to show for numerous tests and tested positive many times," and "continued to use methamphetamines and associate with known drug users contrary to the terms of her case plan." The court also found that Mother "continued to use methamphetamines throughout 2008 and into early 2009," and that "[o]n one occasion, she arrived at the Department of Health and Welfare offices while under the influence of methamphetamines believing she was going to visit her Child."

It is undisputed that Mother had not complied with the case plan from June 1, 2008, when the Court ordered Mother to do so, until March 24, 2009, when Department filed the petition to terminate Mother's parental rights. Mother testified that she left the inpatient treatment after

about two weeks without completing it. She also testified that she became pregnant by a man with whom she was using methamphetamine, and that pregnancy ended in a miscarriage in June 2008. Several months later she became pregnant by another man with whom she was using methamphetamine, and that pregnancy ended in the birth of her son. Mother admitted that both of the men had prior felony convictions for possession of methamphetamine. She also testified that she was "frequenting with drug using friends" until March of 2009.

Not only did the case plan require Mother to participate in random drug testing, but it also provided that if she failed to submit to urinalysis when required, the results would be considered positive. Mother admitted that she did not do the drug testing as required. The representative from the drug testing laboratory testified that Mother was scheduled for sixty-eight drug tests during the period from March 19, 2008, through March 26, 2009, and that she only showed up for twelve drug tests. Of those, five tested positive for amphetamine and/or methamphetamine and one tested positive for cocaine.

The second area of concern stated in the case plan was that Mother struggles with depression. In order to achieve the desired result that she successfully manage her depression, Mother was to obtain a mental health assessment from a named psychiatrist and follow his recommendations. The trial court found that the assessment "was not completed until 2009 after the Court had approved a permanency plan that included termination of parental rights." Mother admitted during her testimony that she did not obtain that assessment until sometime after March of 2009.

The third area of concern was that Mother was inexperienced as a mother and "needs as much parenting/mothering knowledge as possible." To achieve the desired result of becoming "fully confident and competent in the needs of infants and toddlers," Mother was to complete a parenting class for infants and toddlers. The trial court found that "[s]he did not complete the class until June, 2009 well after the petition to terminate her parental rights had been filed." In her testimony, Mother admitted that she did not complete the parenting class before March of 2009, but stated that she did finish it around June 29, 2009.

The fifth area of concern was that Mother did not have a legal source of income or stable housing. To achieve the desired results of stable income and adequate housing, Mother was to "[a]cquire stable housing with the assistance of DHW [Department]" and to "[m]aximize income through employment and any assistance programs to which [she] may qualify." With respect to

8

the tasks Mother was to accomplish regarding this area of concern, the trial court only found that she "does not currently have a job and has not been employed for several years." Mother testified that she was unemployed at the time of trial and was last employed "probably about five years ago." The court found that Mother was currently living with a family friend who had provided her with free housing since March 2008. Mother also testified that she has been receiving food stamps since January or February of 2009 because she was pregnant with her son, and that she was receiving benefits from the Women, Infants and Children Program.

Although Mother contends that there was insufficient evidence showing that she had not complied with her case plan, her testimony showed that she had failed to do so before Department filed the petition to terminate her parental rights. Under the facts of this case, there was sufficient evidence supporting the trial court's finding that Mother had neglected Child as defined in Section 16-1602(25)(a) & (b).

Mother's argument that she had complied with the case plan focuses upon her conduct after the court ordered Department to commence proceedings to terminate Mother's parental rights. Mother argues that "after [she] was admitted into the Drug Court program she made significant progress in becoming clean and sober and complying with her case plan."

The Department social worker assigned to Child's case testified that Mother reported "that she had been through substance abuse treatment, even in-patient on numerous occasions and would stay sober for a couple of months to several months before relapsing." Unfortunately, Mother did not take this matter seriously until about the time the court instructed Department to proceed with termination. The court found, "Since March, 2009, she has greatly improved showing signs of compliance with her drug court requirements." However, the court concluded, "She should be given credit for her progress, but it is not in the best interest of her Child to wait for permanency. . . . [S]he has a long and stubborn addiction to methamphetamines and she is only very early in her recovery."

Idaho Code § 16-2005(1) states, "The court *may* grant an order terminating the relationship where it finds that termination of parental rights is in the best interests of the child and that one (1) or more of the following conditions exist …." (Emphasis added.) "The word 'may' is permissive," *Scott Beckstead Real Estate Co. v. City of Preston*, 147 Idaho 852, 854, 216 P.3d 141, 143 (2009), and it denotes the right to exercise discretion, *Marcia T. Turner, L.L.C. v. City of Twin Falls*, 144 Idaho 203, 211-12, 159 P.3d 840, 848-49 (2007). Even where

one of the conditions supporting termination has been proved, the trial court has discretion not to order termination. *See In re Dayley*, 112 Idaho 522, 526, 733 P.2d 743, 747 (1987) (after finding that the evidence established grounds for termination, the trial court "searched the evidence to determine if it was possible to reunite the family"). Mother's assertion that the court should not have terminated her parental rights because she had been making good progress since March 2009 could be seen as contending that the trial court abused its discretion by not giving her more time to demonstrate she had changed and that Child could be reunited with her. However, Mother did not argue in her briefing that the court abused its discretion in this regard. In fact, during oral argument she expressly rejected that contention. We therefore do not address the issue.

**B.    Was the Trial Court's Finding that Department Had Made Reasonable Efforts to Reunite Mother and Child Supported by Substantial and Competent Evidence?**

The trial court found that Department "made reasonable efforts to reunite the Mother and Child." It then summarized those efforts. It also found: "[Mother's] case plan was reasonable and she had ample time to complete the plan. She knew what she had to accomplish and failed to comply with and complete her case plan as required."

Mother contends that there was insufficient evidence to support the finding that Department had made reasonable reunification efforts. There is no contention that such finding is necessary in order to terminate parental rights. Nevertheless, we will address Mother's contention.

In support of this contention, she states that she "was only allowed to visit with her infant daughter one hour every seven days" and that she "simply was not provided with adequate tools to deal with her addiction until February 2009, and by then the Department was already moving towards termination."

"The case plan shall set forth reasonable efforts which will be made to make it possible for the child to return to his home and shall concurrently include a plan setting forth reasonable efforts to place the child for adoption, with a legal guardian, or in another approved permanent placement." Idaho Code § 16-1621(3). "The plan shall state with specificity the role of the department toward each parent." *Id.* "When appropriate the reunification plan should identify terms for visitation, supervision of visitation, and/or child support." Idaho Juv. R. 44(2).

The parties stipulated to the case plan that was incorporated by reference into the court's order entered on June 1, 2008. The plan recited, "The following plan if followed and executed should assist [Mother] in achieving reunification." Although the case plan did not include a visitation schedule with Child, there is nothing in the record on appeal indicating that Mother ever requested that it identify terms for visitation. There is likewise nothing in the record indicating that there were any necessary services that Department could provide that were omitted from the case plan. Mother cannot identify anything the Department failed to do in order to help her achieve reunification. The Department social worker assigned to this case testified that Mother initially had visitation once a week, that in December 2008 it was increased to twice a week at the direction of the court, and that the visits were later reduced back to once a week because Mother missed visits and arrived thirty to forty-five minutes late for visits.

Case plans can be modified. Idaho Juv. R. 47. There were hearings to review the case plan on September 10, 2008, and on December 9, 2008. Mother did not attend the December hearing. There is nothing in the record indicating that the issue of child visitation was ever raised by her or her counsel or that either of them requested that a visitation schedule be included in the case plan. Likewise, there is nothing in the record indicating that either of them ever asserted that Department was not doing enough to facilitate reunification.

At the December hearing, the court scheduled a permanency hearing for March 10, 2009. Mother did not attend that hearing, although her counsel did. There is nothing in the record indicating that her counsel raised any issue regarding the terms of the case plan, or the frequency of Mother's visitation, or the adequacy of Department's reunification efforts.

Mother's performance certainly improved after she entered drug court. However, Department had no authority to place her into drug court. She was admitted into drug court after pleading guilty on February 6, 2009, which was about eleven months after she was arrested. The record does not reflect the reason for that delay, but had she pled guilty earlier she presumably would have entered drug court earlier. Mother has not shown that Department failed to make reasonable efforts at reunification.

**C.  Was the Trial Court's Finding that Termination Was in Child's Best Interests Supported by Substantial and Competent Evidence?**

In order to terminate Mother's parental rights, the trial court was required to find "that termination of parental rights is in the best interests of the child." Idaho Code § 16-2005(1). The trial court found that termination was in Child's best interests because: "Child has bonded with her foster family and is developing normally, now"; "Child has not bonded with her Mother"; "[Child] is now 22 months old and has been in foster care since she was about 7 weeks old"; "Child's best interest is to be in a secure, safe, and stable home environment without further exposure to the hazards of substance abuse [which Mother] cannot provide"; and "[I]t is not in the best interest of her Child to wait for permanency." Mother does not challenge any of these underlying findings regarding Child's best interests except whether Mother could provide a secure, safe, and stable home environment. She argues, "She has demonstrated significant strides at accomplishing her goal of sobriety and providing a safe, drug-free home for her children."

One of the issues that the trial court had to resolve was whether Mother's post-petition attempts to stop using methamphetamine and to comply with the case plan would be long lasting. In deciding that issue, the court could consider Mother's past conduct, *In re Dayley*, 112 Idaho 522, 525, 733 P.2d 743, 746 (1987), along with the testimony of her and her witnesses that she had changed. "It is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *KMST, LLC v. County of Ada*, 138 Idaho 577, 581, 67 P.3d 56, 60 (2003). It is not our role to reweigh the evidence. *Hogg v. Wolske*, 142 Idaho 549, 556, 130 P.3d 1087, 1094 (2006); Idaho R. Civ. P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous."). The court's finding that Mother cannot provide a secure, safe, and stable home environment without further exposure to the hazards of substance abuse is supported by substantial and competent evidence.

Mother also argues that "[s]ince May 2009, [she] has shown considerable strength and resolve in continuing to fight for her daughter against all odds." As we stated in *State ex rel. Child of Clouse*, 93 Idaho 893, 896, 477 P.2d 834, 837 (1970): "[A] child may not live on parental affection alone. . . . The fact that [mother] wants her children and has waged a continuous legal battle to effect their return to her does not necessarily mean that she can and will provide an adequate home environment for them."

Considering the findings that Child had bonded with foster parents and not with Mother, that Child was twenty-two months old and had been in foster care since she was seven weeks

old, and that it was not in Child's best interest to wait for permanency until Mother demonstrated that she would not resume using methamphetamine, we affirm the trial court's finding that termination was in Child's best interests.

## IV.  CONCLUSION

We affirm the judgment of the magistrate court.   We award costs on appeal to respondent.


Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.