**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42416**

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JOHN DOE (2014-21). | ) ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) ) | 2014 Unpublished Opinion No. 806 |
| Petitioner-Respondent, | ) ) ) | Filed: November 7, 2014 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| JOHN DOE (2014-21), | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Ralph L. Savage, Magistrate.

Order terminating parental rights, <u>affirmed</u>.

Jordan S. Crane, Idaho Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark V. Withers, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

John Doe (2014-21) appeals from the magistrate's decree terminating his parental rights to his two children, arguing that the magistrate's findings that there was clear and convincing evidence of neglect and that termination was in the best interest of the children were not supported by substantial and competent evidence. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

The following facts were adduced from testimony and exhibits presented at the termination hearing. John is the biological father of two children: a daughter born December 30,

1

2008, and a son born August 30, 2011.[1] Jane Doe (2014-20) is the biological mother of the son and was living with John throughout the entirety of this case. A child protection proceeding involving John's daughter was initiated in April 2010 after the daughter suffered burns to her hands while in the custody of her biological mother. As a result, the daughter was placed in John's custody under the protective supervision of the Idaho Department of Health & Welfare in May 2010. John began almost immediately having difficulty providing a safe and sanitary environment for the daughter. During surprise visits in June and July, the Does' home was found to be in an unsanitary state, with clothes, garbage, and debris strewn about the residence.

On July 19, 2010, a search warrant was executed at the Does' residence during which methamphetamine, marijuana, and drug paraphernalia were found. On July 26, the Does were found passed out and not taking care of John's daughter. Their residence was filthy, with no food in the home. A subsequent visit by a social worker on July 27 found the residence in a similar state of disarray with bird droppings on the carpet and pill bottles on the floor accessible by the daughter. As a result of these unsanitary and dangerous conditions, the daughter was removed from the home and placed in foster care. John tested positive for high levels of methamphetamine, marijuana, and amphetamine on July 28. The Does were subsequently arrested on August 4, and charged with possession of a controlled substance. They were each found guilty of the charge and sentenced to a unified term of four years, with a minimum period of confinement of eighteen months. The sentences were suspended and each was placed on probation.

Legal custody of the daughter was granted to the Department following a shelter care hearing on August 24, based on the Does' criminal conduct, neglect, and a lack of a stable home environment. The Does stipulated to a case plan in regard to the daughter on October 5. As part of the case plan, both John and Jane were placed in family drug court. However, as a result of repeated violations, including missed court proceedings, missed drug tests and a general failure to abide by drug court rules, both Jane and John were suspended from family drug court on November 16.

In January 2011, John was incarcerated for approximately a month for violating the terms of his probation by failing to check in as required, providing false information, and using drugs.

---

[1]     The biological mother of the daughter voluntarily terminated her parental rights and is not a part of this proceeding.

Up to that point, the Does failed to make reasonable progress on their case plan by failing to maintain stable employment or provide proof of a stable residence. After release, John was returned to probation. However, he again violated his probation in April by twice testing positive for methamphetamine use. Later in the month, John was informed that he needed to move quickly on his case plan or his parental rights could be terminated.

A permanency hearing was held in July after the daughter had been in foster care for a year. Despite the Does' noncompliance with parts of the case plan and terms of probation, an extended home visit was allowed following a guardian *ad litem* report that indicated John was doing better in providing a sanitary, safe, and stable environment for the daughter and was participating fully in his addiction recovery classes. The daughter was placed in the Does' care under protective supervision of the Department. The Does' son was born August 30, 2011.

A review hearing was held on October 31. A report by the Department indicated that there had been no problems during the extended home visit and that John had complied with his case plan. The Department requested that the case be vacated, but the magistrate declined based on John's failure to obtain a final custody order with regard to his daughter. At that point, the daughter had been in the custody of the Department for fifteen months. She remained in the Does' home under protective supervision following the successful extended home visit and John's completion of his case plan and compliance with probation. After a review hearing in January 2012, the magistrate ordered that the case plan be maintained at status quo until a subsequent review hearing in April as John still had not obtained a custodial order regarding the daughter.

Prior to this hearing, the Does were both caught shoplifting in March 2012. Both were convicted and sentenced to two years of probation. As a result of this offense, John spent sixty days in jail and Jane spent thirty-seven days in jail.

A probation violation was filed against both John and Jane, and they were arrested on April 11 for use of methamphetamine and, in John's case, other drugs. The children were removed from the home. A shelter care hearing was held two days later, during which the Does stipulated to the Department having temporary legal custody of both children. The Does agreed to a revised case plan that involved both children in June.

The Does were again accepted into family drug court in July 2012. Although both John and Jane struggled to fully comply with the drug court requirements, they showed progress with

their new case plan. Both were employed and had moved into a new apartment that was being maintained in a safe and sanitary manner. The children were also responding well to visitation with the Does. At the recommendation of the Department, another extended home visit was attempted starting on October 1. However, both were sent to jail for three days for missing probation appointments. The extended home visit ended on October 25, just twenty-four days after it began, due to the Does' continued noncompliance with their case plan and their incarceration for failing to abide by family drug court rules. Both the Does were terminated from family drug court for their noncompliance shortly thereafter in November.

The petition to terminate the Does' parental rights was filed January 8, 2013. On February 12, the district court issued an order authorizing the suspension of reasonable efforts by the Department, but not suspending visitations. The Does signed individual consents in abeyance on March 18. Pursuant to the consents in abeyance, the Does agreed to have their parental rights terminated if they failed to comply with the requirements of their case plan. In return, the Does were to have the children returned to their care for a third and final extended home visit. This home visit lasted just twenty-two days before it was terminated due to the Does again being arrested on April 10, for probation violations (John's fourth violation and Jane's fifth violation) stemming from the alleged use and sale of prescription narcotics. John and Jane both admitted to associating with unapproved individuals. Additionally, John admitted to involvement in selling and abusing his prescription narcotics and renewed use of methamphetamine. Jane also admitted to knowledge of and involvement in the scheme by contributing her prescription narcotics for sale on at least one occasion. As a result, the magistrate ordered visitations suspended on April 15. The Does did not subsequently request any visitations or modifications in the order of suspension.

John's parental rights were terminated on July 3, 2013, and Jane's parental rights were terminated in October 2013, both pursuant to imposition of their respective consents in abeyance signed in March 2013. John appealed the judgment, which was reversed and the matter was remanded for further proceedings. *See In re Doe*, 155 Idaho 896, 318 P.3d 886 (2014). The Idaho Supreme Court held that Idaho law does not allow for conditional consents to termination of parental rights and that I.C. § 16-2005 requires that termination of parental rights be based on one or more statutory grounds established by clear and convincing evidence. *Id.* at 899, 318 P.3d at 889.

4

While awaiting decision on his appeal, John was again arrested in December 2013. John was found with two underage girls, both runaways on juvenile probation. John admitted to having sex with one of the underage girls and admitted to consuming methamphetamine with both girls. As a result, John's probation was revoked and his sentence imposed.

After remand, a permanency hearing occurred on April 7, 2014. A trial on the petition to terminate occurred April 14. Both John and Jane remained incarcerated as of the date of trial. At the trial, the Department presented testimony and exhibits recounting the Does' failure to comply with the terms of their case plan, probation, and treatment. The testimony indicated that the Does had made no improvements since their incarceration in April 2013. Thereafter, the magistrate issued a decision on July 10, terminating John's parental rights as to both of his children after finding clear and convincing evidence that he had neglected the children and that termination was in their best interest. John appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243,

245-46, 220 P.3d 1062, 1064-65 (2009). We indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho at 191, 141 P.3d at 1060. Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

John asserts that the magistrate abused its discretion in finding that the Department had presented clear and convincing evidence that termination was warranted under I.C. § 16-2005 and was in the best interest of the children. The Department responds that the record contains substantial and competent evidence supporting the magistrate's decision on both points.

### A.    Neglect

John contends that the magistrate's finding that the Department had shown by clear and convincing evidence that he had neglected his children was not supported by substantial and competent evidence. Idaho Code Section 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(28),[2] as well as situations where the parent has failed to comply with the court's

---

[2]    Idaho Code Section 16-1602(28) further defines "neglected" as a child:

orders or the case plan in a child protective act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Thus, failure to comply with a case plan is grounds for termination of parental rights. I.C. § 16-2002(3)(b); *see also In re Doe*, 151 Idaho 356, 364, 256 P.3d 764, 772 (2011).

The magistrate found, and the record supports, that John failed to comply with his case plan, John's children were in the temporary or legal custody of the Department for at least fifteen of the twenty-two months preceding the termination hearing, and reunification was not accomplished by the last day of the fifteenth month.[3] *See* I.C. § 16-2002(3)(b). Indeed, John acknowledged at the termination hearing that he had failed to comply with his case plan. Thus, the magistrate's decision that termination was warranted on the basis of John's neglect is supported by substantial and competent evidence.

**B.     Best Interest**

John also argues that the magistrate erred in concluding that termination was in the best interest of the children. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interest of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interest, the trial court may consider the stability and permanency of the home, the unemployment of the parent, the financial contribution

---

> (a)     Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them; . . . or
>
> (b)     Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being . . . .

[3]     Specifically, John's daughter was in the Department's custody for approximately sixteen of the twenty-three months from May 2010 to April 2012; the other seven months were spent in John's custody under the Department's protective supervision. Additionally, both of John's children were in the Department's custody from April 2012 until the termination hearing in April 2014.

of the parent to the child's care after the child is out of the parent's custody, the improvement of the child while out of the parent's custody, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014); *see also Doe v. Roe*, 133 Idaho at 809-10, 992 P.2d at 1209-10; *Doe v. State, Dep't of Health & Welfare*, 122 Idaho 644, 648, 837 P.2d 319, 323 (Ct. App. 1992). A finding that it is in the best interest of the child to terminate parental rights must still be made upon objective grounds, supported by substantial and competent evidence. *In re Doe*, 152 Idaho 953, 957, 277 P.3d 400, 404 (Ct. App. 2012).

The record supports the magistrate's finding that termination was in the best interest of the children. John has been unable to provide a safe, stable, healthy environment for the children as a result of his substance abuse and other criminal conduct. The child protection case was open for approximately four years and, during that time, John made minimal progress on his case plan and failed to act in a manner that would move him toward reunification with his children, despite reasonable efforts by the Department.[4] John habitually violated the terms of his probation, case plan, and treatment; provided little financial support for the children due to his chronic unemployment; and repeatedly put them in situations that risked their health and wellbeing. Specifically, while in John's care, the daughter developed reactive attachment disorder, which caused her to call every female she met "mom," scratch herself, and pull out her hair. She also began acting out and wetting the bed nightly. The son was allergic to cigarette smoke and had difficulty breathing while staying with John, which required the use of a nebulizer to counteract, yet both the Does continued to smoke in the home.

Conversely, the children flourished in foster care and bonded with their foster parents, who provided for all of the children's needs. The symptoms of the daughter's attachment disorder began to subside in foster care. She also stopped wetting the bed and acting out. The

---

[4]     A court is not required to make a finding of reasonable efforts toward reunification by the Department in a termination case. *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 88, 91, 244 P.3d 232, 235 (2010); *In re Doe*, 150 Idaho 201, 207, 245 P.3d 953, 959 (2010). Nevertheless, the record indicates that the magistrate found, at all relevant stages of the child protection case, that the Department was making reasonable efforts towards reunification. This finding was supported by the documented efforts of the Department to facilitate reunification by providing several extended home visits and visitation opportunities, financial aid, treatment funding and opportunities, and parenting education. John did not object to these findings and presented no evidence to the contrary during any proceeding.

son's breathing improved in the smoke-free environment of the foster home to the point that he no longer needed a nebulizer.

Thus, there is substantial evidence in the record showing that both children regressed during the brief periods that they were with John and then improved upon being returned to foster care. John was unable to provide a stable and safe home for the children for any appreciable period of time during the child protection case as a result of his drug addiction and inability or unwillingness to change his conduct. In addition, John apparently lacks the capacity to change his behavior. He repeatedly failed to complete--or even participate in--drug treatment, violated his probation on at least five occasions, and failed to complete his case plan. The termination statutes of this state exist not merely to alleviate harm but to prevent it. *In re Cheatwood*, 108 Idaho 218, 220, 697 P.2d 1232, 1234 (Ct. App. 1985). Termination of John's parental rights will allow his children to live in a home in which all of their needs are provided for, give them the stability they deserve, and prevent the future harm that will occur from continued custody instability. Indeed, John testified that termination was in the best interest of the children; his only issue was with who adopted them. Accordingly, the magistrate did not err in determining that termination was in the best interest of the children.

## IV.

## CONCLUSION

There is substantial and competent evidence to support the magistrate's finding that the Department presented clear and convincing evidence of neglect and that termination was in the best interest of the children. Accordingly, the magistrate's decree terminating John's parental rights to his children is affirmed. No costs or attorney fees are awarded on appeal.

Judge LANSING and Judge GRATTON, **CONCUR.**