IN THE COURT OF APPEALS OF THE STATE OF IDAHO

**Docket No. 42415**

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JANE DOE (2014-20). | ) ) ) |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) |
| Petitioner-Respondent, | ) ) ) |
| v. | ) ) |
| JANE DOE (2014-20), | ) ) ) |
| Respondent-Appellant. | ) ) ) |

2014 Unpublished Opinion No. 805

Filed: November 7, 2014

Stephen W. Kenyon, Clerk

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**

Appeal from the Magistrate Division of the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Ralph L. Savage, Magistrate.

Order terminating parental rights, <u>affirmed</u>.

James H. Barrett, Jr., Bonneville County Public Defender; Scott J. Davis, Deputy Public Defender, Idaho Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark V. Withers, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Jane Doe (2014-20) appeals from the magistrate's decree terminating her parental rights to her child, arguing that the magistrate's findings that there was clear and convincing evidence of neglect and that termination was in the best interest of the child were not supported by substantial and competent evidence. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

The following facts were adduced from testimony and exhibits presented at the termination hearing. Jane and John Doe (2014-21) are the biological parents of the son in this case, who was born August 30, 2011. However, Jane's involvement with this case began after she started dating and living with John in 2010. In April 2010, a child protection proceeding

1

involving John's daughter was initiated after the daughter suffered burns to her hands while in the custody of her biological mother.[1] As a result, the daughter was placed in John's custody under the protective supervision of the Idaho Department of Health & Welfare in May. The Does began having difficulty providing a safe and sanitary environment for the daughter early on. During surprise visits in June and July, the Does' home was found to be in an unsanitary state, with clothes, garbage, and debris strewn about the residence.

On July 19, a search warrant was executed at the Does' residence during which methamphetamine, marijuana, and drug paraphernalia were found. On July 26, the Does were found passed out and not taking care of John's daughter. Their residence was filthy, with no food in the home. A subsequent visit by a social worker on July 27 found the residence in a similar state of disarray with bird droppings on the carpet and pill bottles on the floor accessible by the daughter. As a result of these unsanitary and dangerous conditions, the daughter was removed from the home and placed in foster care. John tested positive for high levels of methamphetamine, marijuana, and amphetamine on July 28. The Does were subsequently arrested on August 4, and charged with possession of a controlled substance. They were each found guilty of the charge and sentenced to a unified term of four years, with a minimum period of confinement of eighteen months. The sentences were suspended and each was placed on probation.

Legal custody of the daughter was granted to the Department following a shelter care hearing on August 24, based on the Does' criminal conduct, neglect, and a lack of a stable home environment. The Does stipulated to a case plan in regard to the daughter on October 5. As part of the case plan, both John and Jane were placed in family drug court. However, as a result of repeated violations, including missed court proceedings, missed drug tests and a general failure to abide by drug court rules, both Jane and John were suspended from family drug court on November 16.

Jane continued to miss drug tests, failed to keep in regular contact with pretrial services, and stopped paying the costs of supervision until she was terminated from the drug testing program in January 2011. After she was sentenced for the possession charge from July, Jane was required to participate in treatment and obtain employment. However, she failed to find

---

[1]     The biological mother of the daughter voluntarily terminated her parental rights and is not a part of this proceeding.

employment and her participation in treatment and compliance with the terms of her probation deteriorated as the year progressed. Jane failed to drug test regularly, missed several treatment classes (nineteen in total), exhibited a progressively worsening attitude when she did attend, and tested positive for drugs on several occasions.

The Does' son was born August 30, 2011. Jane admitted that she had been using prescription narcotics that were not hers during the pregnancy. Nevertheless, her son remained in her custody for several months after his birth. During this time, the Does had an extended home visit with John's daughter. At a review hearing held on October 31, a report by the Department indicated that there had been no problems during the extended home visit and that John had complied with his case plan. No problems regarding the son were indicated. However, Jane was terminated from treatment in December for failing to attend classes as required and provide regular urinalyses. During this time, Jane had returned to using opiates and admitted that she could not provide a clean drug test during a meeting with her probation officer in February 2012. Her failure to complete treatment and continued drug use were violations of both her probation and child protection case plan.

The Does were then caught shoplifting in March. Both were convicted and sentenced to two years of probation. As a result of this offense, John spent sixty days in jail and Jane spent thirty-seven days in jail.

A probation violation was filed against both John and Jane, and they were arrested on April 11 for use of methamphetamine and, in John's case, other drugs. The Does' son and John's daughter were both removed from the home. A shelter care hearing was held two days later, during which the Does stipulated to the Department having temporary legal custody of both children. The Does agreed to a revised case plan that involved both children in June.

During visits with her son and John's daughter in June, Jane demonstrated a lack of bonding with the children and basic parenting skills. She also missed visitations and, on at least one occasion, attended a visitation appearing to be under the influence. In addition, she missed drug tests, probation appointments and drug court sessions, eventually leading to Jane's incarceration for thirty days for violating the terms of her probation.

The Does were again accepted into family drug court in July 2012. Although both John and Jane struggled to fully comply with the drug court and probation requirements, they showed progress with their new case plan. Both were employed and had moved into a new apartment

that was being maintained in a safe and sanitary manner. The children were also responding well to visitation with the Does. At the recommendation of the Department, another extended home visit was attempted starting on October 1. However, both were sent to jail for three days for missing probation appointments. The extended home visit ended on October 25, just twenty-four days after it began, due to the Does' continued noncompliance with their case plan and their incarceration for failing to abide by family drug court rules. Both the Does were terminated from family drug court for their noncompliance shortly thereafter in November 2012.

The petition to terminate the Does' parental rights was filed January 8, 2013. On February 12, the district court issued an order authorizing the suspension of reasonable efforts by the Department, but not suspending visitations. The Does signed individual consents in abeyance on March 18. Pursuant to the consents in abeyance, the Does agreed to have their parental rights terminated if they failed to comply with the requirements of their case plan. In return, the Does were to have the children returned to their care for a third and final extended home visit. This home visit lasted just twenty-two days before it was terminated due to the Does again being arrested on April 10, for probation violations (John's fourth violation and Jane's fifth violation) stemming from the alleged use and sale of prescription narcotics. John and Jane both admitted to associating with unapproved individuals. Additionally, John admitted to involvement in selling and abusing his prescription narcotics and renewed use of methamphetamine. Jane also admitted to knowledge of and involvement in the scheme by contributing her prescription narcotics for sale on at least one occasion. As a result, the magistrate ordered visitations suspended on April 15. The Does did not subsequently request any visitations or modifications in the order of suspension.

Jane missed an evidentiary hearing for her fifth probation violation on June 3, resulting in a bench warrant being issued. Her probation was revoked at a subsequent evidentiary hearing held one month later, her underlying sentence was imposed, and the court retained jurisdiction. However, Jane was found to be using narcotics and giving them to other inmates while on work release. She was subsequently found to have violated probation a sixth time and was sent on another rider.

John's parental rights were terminated on July 3, 2013, and Jane's parental rights were terminated in October 2013, both pursuant to imposition of their respective consents in abeyance signed in March 2013. John appealed the judgment, which was reversed and the matter was

4

remanded for further proceedings. *See In re Doe*, 155 Idaho 896, 318 P.3d 886 (2014). The Idaho Supreme Court held that Idaho law does not allow for conditional consents to termination of parental rights and that I.C. § 16-2005 requires that termination of parental rights be based on one or more statutory grounds established by clear and convincing evidence. *Id.* at 899, 318 P.3d at 889.

After remand, a permanency hearing occurred on April 7, 2014. A trial on the petition to terminate occurred April 14. Both John and Jane remained incarcerated as of the date of trial, and Jane had not yet begun her second rider. At the trial, the Department presented testimony and exhibits recounting the Does' failure to comply with the terms of their case plan, probation, and treatment. The testimony indicated that the Does had made no improvements since their incarceration in April 2013. Thereafter, the magistrate issued a decision on July 10, 2014, terminating Jane's parental rights as to her son after finding clear and convincing evidence that she had neglected her son and that termination was in best interest of the child. Jane appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a

reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). We indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho at 191, 141 P.3d at 1060. Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

### III.

### ANALYSIS

Jane asserts that the magistrate abused its discretion in finding that termination was warranted under I.C. § 16-2005 and was in the best interest of the child. The Department responds that the record contains substantial and competent evidence supporting the magistrate's decision on both points.

### A. Neglect

Jane contends that the magistrate's finding that the Department had shown by clear and convincing evidence that she had neglected her child was not supported by substantial and competent evidence. Idaho Code Section 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(28),[2] as well as situations where the parent has failed to comply with the court's

---

[2] Idaho Code Section 16-1602(28) further defines "neglected" as a child:

orders or the case plan in a child protective act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Thus, failure to comply with a case plan is grounds for termination of parental rights. I.C. § 16-2002(3)(b); *see also In re Doe*, 151 Idaho 356, 364, 256 P.3d 764, 772 (2011).

The magistrate found, and the record supports, that Jane failed to comply with her case plan, Jane's child was in the temporary or legal custody of the Department for at least fifteen of the twenty-two months preceding the termination hearing, and reunification was not accomplished by the last day of the fifteenth month.[3] *See* I.C. § 16-2002(3)(b). Indeed, Jane acknowledged at the termination hearing that she had failed to comply with her case plan. Thus, the magistrate's decision is supported by substantial and competent evidence of Jane's neglect on this basis.

## B. Best Interest

Jane also argues that the magistrate erred in concluding that termination was in the best interest of the child. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interest of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interest, the trial court may consider the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is out of the parent's custody, the improvement of the child while out of the parent's custody, the parent's efforts to improve his or her situation, and

---

    (a)   Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them; . . . or

    (b)   Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being . . . .

[3]    Specifically, Jane's son was in the Department's custody from April 2012 until the termination hearing in April 2014, a total of approximately twenty-four months.

the parent's continuing problems with the law. *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014); *see also Doe v. Roe*, 133 Idaho at 809-10, 992 P.2d at 1209-10; *Doe v. State, Dep't of Health & Welfare*, 122 Idaho 644, 648, 837 P.2d 319, 323 (Ct. App. 1992). A finding that it is in the best interest of the child to terminate parental rights must still be made upon objective grounds, supported by substantial and competent evidence. *In re Doe*, 152 Idaho 953, 957, 277 P.3d 400, 404 (Ct. App. 2012).

The record supports the magistrate's finding that termination was in the best interest of the child. Jane has been unable to provide a safe, stable, healthy environment for the child as a result of her substance abuse and other criminal conduct. The child protection case regarding her son was open for approximately two years and, during that time, Jane made minimal progress on her case plan and failed to act in a manner that would move her toward reunification with her child, despite reasonable efforts by the Department.[4] The record shows that Jane was given numerous opportunities and provided with abundant assistance to address her addiction issues, including intensive treatment, probation services, problem solving courts, and counseling, most of which was provided at little or no cost. However, Jane repeatedly and consistently failed to take advantage of these opportunities and aid, instead taking a lackadaisical approach and squandering her chances at change. Indeed, Jane habitually violated the terms of her probation, case plan, and treatment; provided little financial support for her child due to her chronic unemployment; and repeatedly put him in situations that risked his health and wellbeing, both through her own conduct and acquiescence to John's conduct. For example, while in Jane's care, the son had difficulty breathing as a result of being allergic to cigarette smoke, which required the use of a nebulizer to counteract, yet both the Does continued smoking in the home.

Conversely, the son flourished in foster care and bonded with his foster parents, who provided for all of his needs. The son's breathing improved in the smoke-free environment of

---

[4] A court is not required to make a finding of reasonable efforts toward reunification by the Department in a termination case. *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 88, 91, 244 P.3d 232, 235 (2010); *In re Doe*, 150 Idaho 201, 207, 245 P.3d 953, 959 (2010). Nevertheless, the record indicates that the magistrate found, at all relevant stages of the child protection case, that the Department was making reasonable efforts towards reunification. This finding was supported by the documented efforts of the Department to facilitate reunification by providing several extended home visits and visitation opportunities, financial aid, treatment funding and opportunities, and parenting education. Jane did not object to these findings and presented no evidence to the contrary during any proceeding.

the foster home to the point that he no longer needed a nebulizer. Moreover, Jane failed to establish a normal, meaningful relationship with her child. The son was in Jane's custody for just over seven months following his birth and was removed from her custody in April 2012 following the Does' arrest for using methamphetamine in violation of the terms of their probation. While her son was in the custody of Department, Jane frequently missed scheduled visitations without excuse. When she did participate in the supervised visits, she failed to exhibit basic parenting skills, such as checking the son's diaper, and showed little interest in interacting with her child. She was also fidgety and appeared to be under the influence on at least one occasion. Indeed, Jane admitted to regularly being under the influence of drugs at court appearances.

Thus, there is substantial evidence in the record showing that the son regressed during the brief periods that he was with Jane and then improved upon being returned to foster care. Jane failed to provide a stable and safe home for her son for any appreciable period of time during the child protection case as a result of her drug addiction and inability or unwillingness to change her conduct. In addition, Jane apparently lacks the capacity to change her behavior. She repeatedly failed to complete--or even participate in--drug treatment, violated her probation six times, and failed to complete her case plan. As noted by the magistrate, Jane's "behavior is escalating, not improving," despite four years of chances and assistance. The termination statutes of this state exist not merely to alleviate harm but to prevent it. *In re Cheatwood*, 108 Idaho 218, 220, 697 P.2d 1232, 1234 (Ct. App. 1985). Termination of Jane's parental rights will allow her child to live in a home in which all of his needs are provided for, give him the stability he deserves, and prevent the future harm that will occur from continued custody instability. Accordingly, the magistrate did not err in determining that termination was in the best interest of the child.

## IV.

## CONCLUSION

There is substantial and competent evidence to support the magistrate's finding that the Department presented clear and convincing evidence of neglect and that termination was in the best interest of the child. Accordingly, the magistrate's decree terminating Jane's parental rights to her child is affirmed. No costs or attorney fees are awarded on appeal.

Judge LANSING and Judge GRATTON, **CONCUR.**

9