IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 36664-2009/36665-2009

| | | |
|---|---|---|
| DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Boise, May 2010 Term |
| Plaintiff-Respondent, | ) ) | 2010 Opinion No. 58 |
| v. | ) ) | Filed: May 28, 2010 |
| JOHN DOE, | ) ) | Stephen W. Kenyon, Clerk |
| Defendant-Appellant. | ) ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, in and for Nez Perce County.  The Hon. Jeff M. Brudie, District Judge; Hon. Kent J. Merica, Magistrate Judge.

The judgment of the district court is <u>affirmed</u>.

Neil P. Cox, Jr., Clarkston, Washington, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, Marcy J. Spilker, Deputy Attorney General, for respondent.

_____

EISMANN, Chief Justice.

This is an appeal from a judgment terminating the parental rights of a father in three of his children.  We affirm the decision of the district court upholding the judgment of the magistrate judge.

## I.  FACTS AND PROCEDURAL HISTORY

While Father and Mother (Parents) were residing in Pierce County, Washington, they had a daughter (Child One) born on July 6, 2005.  The Washington Department of Social and Health Services (DSHS) removed Child One from Parents' custody on September 30, 2005.  Mother has epilepsy that causes frequent seizures, ranging from dizziness and difficulty speaking to full grand mal seizures that cause convulsions and unconsciousness.  DSHS removed Child One from Parents' custody because they would not follow precautions necessary to protect the baby from the consequences of those seizures.  Mother refused to refrain from carrying and picking up the

baby. She also refused to stop breastfeeding her baby even though her anti-seizure medication could cause neurological and organ damage to her baby. Mother became pregnant again, and Parents moved from Washington to Lewiston, Idaho, to avoid having DSHS become involved with their unborn child.

Child One remained in the custody of DSHS, which ultimately filed a petition in Washington to terminate Parents' parental rights. That matter was tried during July 2007, and on October 22, 2007, the Washington court issued a decision terminating Parents' parental rights in Child One.

Prior to the termination, DSHS had provided a variety of services to Parents, as did the Idaho Department of Health and Welfare (DHW) after Parents had moved to Idaho. The Washington court found that Parents have complex developmental disabilities, including low intellectual abilities and a lack of knowledge and skills to survive, to conduct their lives independently, and to care for their child in a safe manner. Father was diagnosed with oppositional-defiance disorder, schitzotypal personality disorder, and organic brain syndrome. His anger outbursts and behavior towards service providers caused three public health nurses to stop providing services to the family. Mother was diagnosed with depressive disorder and mild mental retardation. Although Parents completed parenting classes, they had difficulty implementing the instructed skills. The court concluded that termination of the parental relationship was in Child One's best interest and that Parents will not be able to remedy their parental deficiencies within the near future.

On November 1, 2006, Mother gave birth to a boy and a girl (Twins). The hospital personnel discussed with Parents numerous times the potential risk of organ and neurological damage to Twins from Mother's anti-seizure medication if she breastfed them. Father became very upset during these discussions, clenching his fists and refusing to listen, and he threatened to sue anybody who tried to take Twins away. Parents stated that Mother was going to breastfeed anyway, and she began doing so while still in the hospital. DHW took Twins into custody, and on November 2, 2006, it commenced proceedings under the Child Protective Act. The matter was set for a shelter care hearing, and at that hearing the magistrate judge found that it was contrary to the health, safety, and welfare of Twins to be returned to Parents' home. The adjudicatory hearing was held on January 29, 2007. The magistrate found that Parents were

unable to discharge their parental responsibilities with regard to Twins, and the court vested their custody in DHW.

After working with Parents for over a year, on February 22, 2008, DHW filed a petition to terminate Parents' parental rights in Twins. The evidentiary hearing on that petition was held during three days in April and June, 2008.

The magistrate found that Father has a low-average to borderline range of intellectual functioning, and oppositional-defiance disorder, and a schitzotypal disorder. People with these personality disorders are generally very resistive to direction, have trouble warming up to personal relationships, tend to be suspicious and paranoid, and suffer from emotional extremes. The court found that Mother suffers from a depressive disorder, has mild retardation, and epilepsy. Because of her depressive disorder and mild retardation, she tends to be tearful and unable to cope with stressful situations. With her epilepsy, she is subject to frequent and severe seizures.

Parents had case managers in their home about forty hours per week to assist with day-to-day living skills. Father showed one of the providers a gun and stated that he wanted to kill child protection workers in Seattle and Lewiston. As a result, DHW terminated in-home visits with Twins.

A DHW caseworker attempted to teach Parents about infant care, but she found herself repeating the same things from week to week. Parents were not receptive to instruction or direction and were unable to retain what they had been taught.

At some point during the Child Protective Act proceedings, Parents moved from Lewiston to Orofino. They did not give a credible reason for doing so. That move limited their visits with Twins and removed Parents from a variety of services available to them through DHW.

The magistrate found that Parents had failed to comply with the case plan, adding, "It is not envisioned that a parent can methodically and mechanically go through the motions of the case plan and achieve reunification. The case plan is an integral and important part of the Child Protective Act." It also found that Parents were unable to show good judgment when caring for Twins and would place them in compromising situations. They were also unable to understand and appreciate their developmental milestones and would focus on the girl, who is developing at

a normal pace, to the detriment of the boy, who is developmentally delayed. Father would become easily frustrated with the boy's activities.

The court determined that based upon Parents' performance for more than one and one-half years, their parenting ability will not improve in the foreseeable future sufficiently to have Twins in their custody. They were unable to provide parental care necessary for the well-being of Twins and are unable to discharge their parental responsibilities.

The court also found that even with supportive services, Parents will not be able to discharge their parental responsibilities. It found persuasive the testimony of three DHW caseworkers who had worked closely with Parents throughout the proceedings. These workers have been threatened by Father and faced resistance from both Parents. During the course of the proceedings, Parents would terminate providers if there was any indication that they disagreed with Parents' position regarding this case or were cooperative with the DHW caseworkers. Parents would view providers as "the enemy" or a "spy" if they offered any suggestions, or corrective measures regarding Parents' parenting. Based on Parents' history in working with their supportive services, the court found that it could not have any assurance that supportive services would be a constant in Parents' household. On August 7, 2008, the magistrate court entered a judgment terminating Parents' parental rights in Twins.

On February 6, 2008, shortly before DHW filed a petition to terminate Parents' parental rights in Twins, Mother gave birth to another daughter (Child Four). On the date of the child's birth, DHW filed a petition under the Child Protective Act. After a shelter care hearing, Child Four was placed in the custody of DHW. On March 7, 2008, at the adjudicatory hearing, Parents stipulated that sufficient facts existed for Child Four to be found within the purview of the Child Protective Act.

On May 6, 2008, DHW filed a petition to terminate Parents' parental rights in Child Four. On July 8, 2008, the parties stipulated that the magistrate could consider the testimony of all of the witnesses who had testified at the hearing on the termination proceedings involving Twins. Parents did not offer any new or additional evidence. The court adopted the findings of fact and conclusions of law entered in the case involving Twins. On September 22, 2008, the court entered a judgment terminating Parents' parental rights in Child Four.

Parents appealed both judgments to the district court. On May 21 and 29, 2009, respectively, the court entered opinions affirming the judgment in the case involving Child Four

4

and the judgment in the case involving Twins.  Father then appealed to this Court.  The cases were consolidated on appeal.

## II.  ISSUES ON APPEAL

1.  Did the district court err in upholding the magistrate's finding that Parents was unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the children?

2.  Did the district court err in upholding the magistrate's finding that Father neglected the children?

## III.  ANALYSIS

**A.  Did the District Court Err in Upholding the Magistrate's Finding that Parents Were Unable to Discharge Parental Responsibilities and Such Inability Will Continue for a Prolonged Indeterminate Period and Will Be Injurious to the Health, Morals or Well-Being of the Children?**

The trial court must find that grounds for terminating parental rights have been proved by clear and convincing evidence.  *Department of Health and Welfare v. Doe*, 147 Idaho 353, 356, 209 P.3d 650, 653 (2009); I.C. § 16-2009.  Idaho Code § 16-2005(1)(d) provides that a court may terminate parental rights if it finds "that termination of parental rights is in the best interests of the child and that . . . [t]he parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child."  Subsection (6) of the statute states, "If the parent has a disability . . . the parent shall have the right to provide evidence to the court regarding the manner in which the use of adaptive equipment or supportive services will enable the parent to carry out the responsibilities of parenting the child."

Father contends that the district court erred in upholding the judgments because there was not clear and convincing evidence supporting the magistrate's findings that Parents were unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period.  "When the district court acts in its appellate capacity, we review the decision of the district court to determine whether it correctly decided the issues presented to it on appeal."  *Idaho Dept. of Health and Welfare v. Doe*, 148 Idaho 124, 126, 219 P.3d 448, 450

(2009). Whether a matter has been proved by clear and convincing evidence is primarily a matter for the trial court. *Hogg v. Wolske*, 142 Idaho 549, 554, 130 P.3d 1087, 1092 (2006). On appeal, the appellate court does not reweigh the evidence to determine if it was clear and convincing. Rather, "where a trial court has noted explicitly and applied a clear and convincing standard, an appellate court will not disturb the trial court's findings unless they are not supported by substantial and competent evidence." *State v. Doe*, 144 Idaho 534, 535, 164 P.3d 814, 815 (2007). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Anderson v. Harper's, Inc.*, 143 Idaho 193, 195, 141 P.3d 1062, 1064 (2006). "It is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *KMST, LLC v. County of Ada*, 138 Idaho 577, 581, 67 P.3d 56, 60 (2003).

The district court considered the arguments made by Father concerning the alleged insufficiency of the evidence. In a lengthy and well-reasoned opinion, it thoroughly reviewed the facts and addressed those arguments. Father has not shown that the district court erred in determining that the magistrate's findings with respect to this ground for termination were supported by substantial and competent evidence.

**B. Did the District Court Err in Upholding the Magistrate's Finding that Parents Neglected the Children?**

The magistrate also granted termination on the ground that Parents had neglected the children pursuant to Idaho Code § 16-2005(1)(b). Having found that there was substantial and competent evidence to affirm the magistrate court's termination of Parents' parental rights pursuant to Idaho Code § 16-2005(1)(d) due to their inability to discharge parental responsibilities, the district court declined to address whether there was sufficient evidence to affirm the magistrate's finding regarding the alternative ground of neglect. On appeal, Father contends that there was not sufficient evidence to support the magistrate's finding on this ground. He does not contend, however, that the district court erred in not addressing this alternative ground, and it did not. *Kirk v. Ford Motor Co.*, 141 Idaho 697, 704, 116 P.3d 27, 34 (2005).

## IV.  CONCLUSION

We affirm the judgment of the district court.  We award costs on appeal to respondent.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.