IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 44795-2017 / 44796-2017

|  |  |
|---|---|
| ) | |
| IN THE MATTER OF THE ) | Boise, May 2017 Term |
| TERMINATION OF THE PARENTAL ) | |
| RIGHTS OF: ) | 2017 Opinion No. 65 |
| ) | |
| JANE DOE (2017-6) and ) | Filed: June 20, 2017 |
| JOHN DOE (2017-7) ) | |
| ) | Karel A. Lehrman, Clerk |
| Respondents-Appellants. ) | |
| ) | |

Appeal from the Magistrate Court of the First Judicial District of the State of Idaho, in and for Bonner County. Hon. A. Lynne Krogh, Magistrate Judge.

The judgment of the magistrate court is affirmed.

Bruce H. Greene, Bruce H. Greene PA, Sandpoint, submitted a brief on behalf of Jane Doe (2017-6).

Catherine E. Enright, Deputy Public Defender, Sandpoint, submitted a brief on behalf of John Doe (2017-7).

Denise L. Rosen, Deputy Attorney General, Coeur d'Alene, submitted briefs on behalf of the Idaho Department of Health and Welfare.

_____

EISMANN, Justice.

This is an appeal out of Bonner County from a judgment terminating the father's parental rights in his minor children and a judgment terminating the mother's parental rights in those children. We affirm the judgments of the magistrate court.

I.

Factual Background.

Jane Doe ("Mother") and John Doe ("Father") were married for twenty-five years and had eleven children between three years of age and twenty-two years of age. At the time of this proceeding, seven of the children were under the age of eighteen. Mother and Father lived in an

Amish community in Washington until 2004. While they were in that community, they were shunned by other members because Father had confessed to inappropriately touching two of his daughters.

In March 2015, the family moved to Spirit Lake, Idaho, to become members of another religious community. The oldest daughter, who was then fourteen years of age, disclosed to that community that Father had sexually molested her when she was a child, starting when she was four or five years of age and ending when she was fourteen; that when she was six, seven, or eight years of age, she told Mother, but Mother did nothing to protect her; and that when she was twelve years of age, the molestation became less frequent as Father began sexually molesting a younger sister who was six years of age. Members of that community encouraged Father to confess to law enforcement, and he and Mother went to the county sheriff's office and confessed to sexually molesting two of his daughters while they lived in Washington. Because the offenses did not occur in Idaho, he was not arrested. Members of the community met with Father and Mother and developed with them a plan to protect the other children from Father sexually molesting them. Father and Mother violated the provisions in the plan, and a member of the community contacted the Idaho Department of Health and Welfare ("Department").

A Department case manager met with Father and Mother, who entered into a safety plan to protect the minor children. Father called the case manager and stated that they planned to move back to the state of Washington. The case manager responded that the Department could not supervise the safety plan if they were in another state. Mother then called the case manager and stated that they were moving to Washington with the children. The Department then obtained an order authorizing it to remove the minor children from the house.

On August 15, 2015, the county prosecutor filed a petition under the Idaho Child Protective Act. At some point, Father was charged in the state of Washington with three counts of felony child molestation in the first degree that were committed sometime between 1999 and 2001 against the oldest daughter. On June 7, 2016, he pled guilty to all three charges, and on July 19, 2016, he was sentenced to ten years in prison and lifetime supervision.

On October 17, 2016, the Department filed a petition to terminate Father's and Mother's parental rights in their minor children. After a two-day evidentiary hearing, the magistrate court found that the Department had proved by clear and convincing evidence that there were grounds

2

for terminating the parental rights of Father and Mother in their minor children. It entered judgments terminating the parental rights of both parents, and they timely appealed.

"The trial court must find that grounds for terminating parental rights have been proved by clear and convincing evidence." *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010). "On appeal, the appellate court does not reweigh the evidence to determine if it was clear and convincing." *Id.* "In an action to terminate parental rights where a trial court has noted explicitly and applied a clear and convincing standard, an appellate court will not disturb the trial court's findings unless they are not supported by substantial and competent evidence." *State v. Doe*, 144 Idaho 534, 535, 164 P.3d 814, 815 (2007). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Anderson v. Harper's, Inc.*, 143 Idaho 193, 195, 141 P.3d 1062, 1064 (2006). "It is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *KMST, LLC v. Cnty. of Ada*, 138 Idaho 577, 581, 67 P.3d 56, 60 (2003).

## II.

### Did the Magistrate Court Err in Terminating Father's Parental Rights?

Idaho Code section 16-2005(1) provides that a court may grant an order terminating parental rights if it finds that such termination is in the child's best interests and that one of the statutory conditions for termination exists. The magistrate court found by clear and convincing evidence that three of the statutory conditions existed for terminating Father's parental rights in the seven minor children. They were:

> (a) Father had neglected the children pursuant to Idaho Code sections 16-2005(1)(b) and 16-2002(3)(a),[1]

> (b) Father had neglected the children as defined by Idaho Code sections 16-2005(1)(b) and 16-2002(3)(b),[2] and

---

[1] Idaho Code section 16-2005(1)(b) states as a condition for termination of a parent's parental rights that the parent has neglected the child. Idaho Code section 16-2002(3)(a) defines "neglected" as conduct that is defined in Idaho Code section 16-1602(31). That definition includes a child who "is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them."

[2] Idaho Code section 16-2002(3)(b) defines "neglected" as follows:

(c) Father had abused the oldest of the minor children as defined by Idaho Code sections 16-2002(4) and 16-1602(1)(b),[3] and, with respect to the remaining six minor children, he was incarcerated and was likely to remain incarcerated for a substantial period of time during their minority (Idaho Code section 16-2005(1)(e).[4]

With respect to the six youngest children, the magistrate court found that Father "has been incarcerated and is likely to remain incarcerated for a substantial period of time during the minority of each of these children." Father does not challenge that finding on appeal.

With respect to the oldest of the minor children, the magistrate court found that Father had sexually abused her. Father argues that he was not criminally charged with abusing that daughter, she did not testify, and the evidence supporting that finding was hearsay. There is no requirement that a parent be charged or convicted criminally in order to find in a termination proceeding that the parent has sexually abused his or her child. The hearsay testimony regarding Father's abuse of this daughter was admitted without objection. "The general rule is that where hearsay evidence is admitted without objection, it may properly be considered in determining the facts; the important question being the weight to be given such evidence." *Gem-Valley Ranches, Inc. v. Small,* 90 Idaho 354, 371, 411 P.2d 943, 953 (1966). The majority view is that hearsay evidence admitted without objection "is as strong as any other legally competent evidence." 29A Am.Jur.2d *Evidence* § 1367 (2008). It was the province of the magistrate court to determine the weight to be given the testimony and the inferences to be drawn from it. *In re Doe (2014-22)*, 157 Idaho 955, 342 P.3d 667, 670 (2015). Thus, the court's finding that Father sexually abused this daughter is supported by substantial and competent evidence.

---

(b) The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:
> (i)  The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and
> (ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

[3] Idaho Code section 16-2005(1)(b) states as a condition for termination of a parent's parental rights that the parent has abused the child. Idaho Code section 16-2002 states that "abused" means conduct that is defined in Idaho Code section 16-1602. That definition includes "[s]exual conduct, including . . . molestation." I.C. § 16-1602(1)(b).

[4] Idaho Code section 16-2005(1)(e) states as a condition for termination of a parent's parental rights that "[t]he parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority."

4

The magistrate court found the existence of a condition supporting the termination of Father's parental rights in the six youngest children and a ground supporting the termination of Father's parental rights in the oldest of the seven children. We therefore do not need to address the other two conditions found by the court to exist. The statutory conditions supporting termination of parental rights listed in subsections (a) through (e) of Idaho Code section 16–2005(1) are independent. *In re Doe*, 152 Idaho 910, 914, 277 P.3d 357, 361 (2012). If we uphold the magistrate court's finding as to one condition with respect to a child or children, we need not address any other statutory condition found by the court to exist. *Id.*

In order to terminate a parent-child relationship, the magistrate court must also find that termination is in the best interests of the child. I.C. § 16-2005(1). The court found, by clear and convincing evidence, that it was in the best interests of the children that Father's parental rights in the seven minor children be terminated. The court found that he was a serial child molester; that there was credible evidence that he had sexually abused most of his children; that the abuse had been happening for at least sixteen years; that he had repeatedly confessed, repented, and then continued molesting his children; and that no child was safe around him.

On appeal, Father does not dispute these findings. Rather, he argues that other factors should outweigh them. He argues that the children "have grown up in a happy, loving home"; that "Mother and Father have successfully raised several children into adulthood, and by all accounts have raised the children involved in this case to be well-mannered, respectful, happy, and healthy children"; and that Father "still loves his children as well and will provide for them in any way he can while incarcerated." Father has not shown that the court erred in finding that it was in the best interests of the children to terminate Father's parental rights. Therefore, we affirm the judgment terminating Father's parental rights in the seven minor children.

## III.

### Did the Magistrate Court Err in Terminating Mother's Parental Rights?

The magistrate court found by clear and convincing evidence that two of the statutory conditions existed for terminating Mother's parental rights. They were: (a) Mother had neglected the children pursuant to Idaho Code sections 16-2005(1)(b) and 16-2002(3)(a), and (b) Mother had neglected the children as defined by Idaho Code sections 16-2005(1)(b) and 16-2002(3)(b).

With respect to neglect as defined in Idaho Code section 16-2002(3)(a), a child is neglected if the child "is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them." I.C. §§ 16-2002(3)(a), 16-1602(31). The magistrate court found by clear and convincing evidence that Mother had neglected by failing to provide care or control necessary for the well-being of the children, in that "she knew or had reason to know that the children were not safe around their father, and took no steps to protect the children's safety." The court found, based solely upon the testimony of Father and Mother:

> Sometime around 2004 or before, [Father] confessed to other bishops and his wife that he had molested two of his daughters; sometime around 2005 [Father] confessed to [Mother] that he had molested two of his daughters; sometime around 2006, [Mother] suspected [Father] was molesting [the oldest daughter] in the bedroom and [the daughter] confirmed it; sometime around 2008 [Mother] knew [Father] was being investigated by Washington child protective services for child molestation; and sometime around 2012 [Father] exposed himself to two of his daughters and [Mother] knew about it about a week afterwards. This much was established based solely on the testimony of [Father] and [Mother]. Based on this information alone, [Mother] knew or had reason to know that the children were not safe with their father. Although [Mother] likely did not know the full extent of [Father's] molestation of the children, and although there was no evidence of sexual molestation of three of the children, she knew enough that she should have known that none of the children were safe if left alone with him.

Mother contends on appeal, "The evidence was hardly clear as to when the incidences of molestation took place, much less when she became aware of it, or to what extent it had occurred." That assertion is contrary to Mother's testimony. She testified that Father first molested their oldest daughter when the daughter was six years old and that she found out about it because Father told her. The magistrate court found that Father informed Mother of the molestation when the daughter was six years old, and she was twenty-two years old at the time of the evidentiary hearing. When asked what she did when Father told her, Mother answered, "I don't really know." She also testified that she did not call the police because "I didn't realize that I would be supposed to." When asked when was the last time that Father sexually abused a child other than the oldest daughter, Mother answered, "Well, it's been so far back I can't remember, you know, all the time, just how it all went." She then stated that she remembered a

6

time that Father had sexually abused the oldest daughter when she was twelve years of age. Mother testified that she heard Father go into the oldest daughter's bedroom during the night and she listened to what was happening. The next morning, she asked the daughter whether Father was in her bedroom, and the daughter responded that he was. Mother asked what he had done, and the daughter described the sexual abuse. Mother was then asked whether she confronted Father, and she had and that he had admitted it. When asked whether she had called the police, she again stated that she had not because "I didn't realize that's what you do." When asked how many times Father had abused the daughter between when she was six and twelve years of age, Mother stated, "I'm not sure." The oldest daughter testified that during that six-year period, the sexual abuse "was regular like every day, then maybe every week. Maybe a few weeks passed by and then again very regular." The oldest daughter also testified that when she was twelve years of age, Father basically stopped sexually molesting her and began molesting a younger sister who was six years of age.

When the oldest daughter was twelve years of age, Washington authorities wanted to interview her regarding whether Father was sexually abusing her. Before they met with the daughter, Mother admitted telling her, "Be careful what you say." The daughter testified that Mother told her to lie, which she did, and the investigation ended at that time.

Mother asserts on appeal: "Perhaps two or even four girls had had some degree of molestation; versions differ dramatically. None of the three boys were allegedly violated; and there was no sufficient showing that any of the other five girls underage and at home had been either." Mother testified that to her knowledge, three of the minor daughters had been sexually molested by Father. In addition, the evidence showed that all three of the adult daughters reported that they had been sexually abused by Father. The oldest daughter testified that one of her brothers told her he also had been sexually molested by Father, and the magistrate court found that that brother had disclosed incidents of sexual abuse to the case manager.

Mother was asked when was the last time that she was aware of Father abusing one of their children, and Mother answered that it was four or five years earlier. She testified that to her knowledge, he had sexually abused four of their daughters. When asked whether any of her children told her that Father had sexually abused them, she answered, "Yes," but could not remember what she said to them and did not call the police. The magistrate court's finding that

Mother had neglected the children by failing to provide care or control necessary for their well-being is supported by substantial and competent evidence.

In order to terminate a parent-child relationship, the magistrate court must also find that termination is in the best interests of the child. I.C. § 16-2005(1). The court found, by clear and convincing evidence, that it was in the best interests of the children that Mother's parental rights in the seven minor children be terminated. The court found that termination of Mother's parental rights was in the best interests of the children because Mother was not able to provide the care and control necessary for the children's well-being and there was no reasonable expectation that she would be able to do so within a reasonable period of time. Mother does not challenge that factual finding on appeal. Therefore, it is unnecessary to set forth the court's basis for this finding.

Mother simply asserts that there was insufficient evidence to prove that termination of Mother's parental rights was in the children's best interests because "none of [the minor children] were proved to have been molested by Father and thus 'neglected' by Mother. None of the minor children are even discussed individually by the Court. Nor is there any discussion why the boys' interests are 'served' when they weren't even endangered to begin with." There is no requirement that all of the children suffer harm in this circumstance. "[O]nce the State is aware of circumstances indicating a child faces potential harm, it should not have to wait to intervene until that child suffers actual harm or illness, but rather should act to prevent it." *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 36, 43, 244 P.3d 180, 187 (2010) (footnote omitted). Substantial and competent evidence supports the magistrate court's finding that termination of Mother's parental rights was in the best interests of the children.

## IV.

### Conclusion.

We affirm the judgment terminating Father's parental rights in the seven minor children, and we affirm the judgment terminating Mother's parental rights in the seven minor children.

Chief Justice BURDICK, and Justices JONES, HORTON and BRODY **CONCUR.**

8