## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 46142

| | | |
|---|---|---|
| In the Matter of: JOHN DOE I and JANE DOE I, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | Filed: November 30, 2018 |
| Petitioner-Respondent, | ) ) | Karel A. Lehrman, Clerk |
| v. | ) ) | THIS IS AN UNPUBLISHED |
| JANE DOE, | ) ) | OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Clearwater County. Hon. Randall W. Robinson, Magistrate.

Judgment terminating parental rights, affirmed.

McFarland Law Offices, LLC, Joanna M. McFarland, Lewiston, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Marcy J. Spilker, Deputy Attorney General, Lewiston, for respondent.

_____

GRATTON, Chief Judge

Jane Doe appeals from the judgment terminating her parental rights to her minor children. Doe argues the magistrate erred in terminating her parental rights by rejecting her argument that the State failed to prove the Indian Child Welfare Act (ICWA) did not apply in this case and by improperly reviewing documents not otherwise admitted as evidence at the termination trial. We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of DS and PM.[1] On the day PM was born, both PM and Doe tested positive for marijuana. Consequently, the Idaho Department of Health and Welfare (Department) initiated a child protection investigation that resulted in the removal of DS and PM from Doe's home. As a result of the investigation, the Department filed a petition pursuant to the Child Protective Act (CPA) alleging that Doe had neglected these children and requesting that the court take jurisdiction of the children.

A shelter care hearing was held in November 2016. Neither parent appeared at the shelter care hearing. Nevertheless, the magistrate placed DS and PM in the Department's temporary custody pending an adjudicatory hearing. The magistrate held an adjudicatory hearing in December 2016. Both parents were present at that hearing. The parents stipulated that the children came within the jurisdiction of the CPA due to an unstable home environment. The parents also stipulated that it was in the children's best interests to remain in the custody of the Department and that it was contrary to the children's welfare to return to their home at that time. The magistrate found that the children came within the purview of the CPA and placed them in the custody of the Department.

Thereafter, the Department submitted a case plan to the magistrate, and the magistrate conducted a case plan hearing in January 2017. The parents were present at the case plan hearing and agreed to the terms of the Department's proposed case plan. The magistrate approved the plan as submitted. The magistrate then held five review hearings in March, May, June, July, and August of 2017. In October 2017, the Department submitted a permanency plan and recommended changing the primary goal of the case from reunification with the parents to termination of the parents' rights and adoption of the children. The magistrate then held a permanency hearing and approved the Department's recommendation for termination of parental rights and adoption. The Department filed a petition to terminate parental rights in April 2018 and amended the petition in May 2018. A trial on the petition to terminate Doe's parental rights was held on May 31 and June 1, 2018. Following the trial, the magistrate entered judgment terminating Doe's parental rights to DS and PM. Doe timely appeals.

---

[1] The father of DS and PM is not a party to this appeal.

# II.

## ANALYSIS

Doe asserts the magistrate erred in terminating her parental rights to DS and PM. Doe also asserts the magistrate erred in rejecting her argument that the State failed to prove that the ICWA did not apply in this case. Finally, Doe asserts the magistrate improperly reviewed documents not otherwise admitted as evidence at the termination trial.

## A.     Neglect

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. Idaho Code § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably

3

certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Doe argues that the magistrate erred in terminating her parental rights to the children. According to Doe, the court could not have found, by clear and convincing evidence, that she neglected her children based on the testimony at trial. Doe contends that a review of the evidence shows that the Department performed an inadequate investigation for the removal of the children and was deficient in fulfilling its obligation for reunification.

As an initial matter, we note that the CPA contemplates that the Department will make reasonable efforts at reunification during the pendency of CPA proceedings. *In re Doe*, 156 Idaho 682, 688 n.3, 330 P.3d 1040, 1046 n.3 (2014). "However, whether the Department has made reasonable efforts at reunification is not part of the magistrate court's analysis when terminating parental rights on the grounds of neglect." *Id.*; *see* I.C. § 16-2002(3)(b)(i)-(ii). The Department's efforts at reunification should be addressed during the CPA proceedings by motion or argument to the court under I.C. § 16-1622(2)(g)(iii). *In re Doe*, 156 Idaho at 688 n.3, 330 P.3d at 1046 n.3. To the extent Doe argues the Department failed to make reasonable efforts at reunification, such argument is irrelevant to this Court's determination of whether the magistrate erred in terminating Doe's parental rights. Therefore, the sufficiency of the Department's efforts at reunification are not properly before this Court on appeal.

Additionally, Doe has failed to show error in the magistrate's finding of neglect. Insofar as Doe urges this court to "find that the Magistrate could not have found by clear and convincing evidence that the State met its burden for a determination of Termination of Parental Rights," her request amounts to a request for this Court to reweigh the evidence presented to the trial court.

4

"Whether a matter has been proved by clear and convincing evidence is primarily a matter for the trial court." *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010). "On appeal, the appellate court does not reweigh the evidence to determine if it was clear and convincing." *Department of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010). "In an action to terminate parental rights where a trial court has noted explicitly and applied a clear and convincing standard, an appellate court will not disturb the trial court's findings unless they are not supported by substantial and competent evidence." *State v. Doe*, 144 Idaho 534, 535, 164 P.3d 814, 815 (2007). Here, the magistrate explicitly noted and applied a clear and convincing standard in the memorandum opinion. The magistrate also determined that Doe had neglected the children and that it was in the children's best interests for Doe's parental rights to be terminated. Although Doe cites to the record in order to challenge the magistrate's findings, we decline to merely reweigh the evidence on appeal. Nonetheless, the Department argues the trial court's decision to terminate Doe's parental rights on the basis of neglect is supported by substantial and competent evidence. We agree.

Idaho Code § 16-2002(3) defines "neglect" as any conduct included in I.C. § 16-1602(31), as well as situations where the parent has failed to comply with the court's orders or the case plan in a child protective act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. It is uncontested on appeal that the children had been in the custody of the Department for at least fifteen out of the most recent twenty-two months. Furthermore, the magistrate concluded that Doe neglected the children on the basis of I.C. § 16-2002(3)(a) and (b).

### 1.    I.C. § 16-2002(3)(b)

Substantial and competent evidence supports the magistrate's determination that Doe neglected her children pursuant to I.C. § 16-2002(3)(b) because she failed to comply with the case plan. After testing positive for marijuana on the day PM was born, Doe identified herself to

5

the Department's safety assessor as an addict who had struggled with marijuana and methamphetamine use. Doe also admitted that her home was a revolving door for friends who come to use drugs. Thus, the case plan adopted and approved by the magistrate required Doe to perform specific tasks addressing issues related to her substance abuse and mental health, and to the safety and stability of her home.

To address her substance abuse, the case plan required Doe to complete a substance abuse assessment by January 31, 2017, to comply with the recommendations set forth in that assessment, and to sign releases of information so that social workers could speak to Doe's counselors about her progress and compliance. A social worker from the Department testified that the assessment was not completed on time and that Doe did not complete inpatient residential treatment as recommended in the assessment. The social worker also testified that Doe initially provided a signed release of information but eventually rescinded it and then refused to sign any new releases. The case plan also required Doe to submit to random urinalysis testing at the discretion of the social worker. The social worker testified that Doe failed to show up for four of the eight scheduled UA tests.

To address her mental health, the case plan required Doe to schedule and complete a mental health assessment with a licensed mental health therapist and to sign releases of information so that the social worker and therapist could communicate about Doe's progress and compliance with treatment. The case plan also required Doe to comply with appointments and treatment recommended by the therapist. The social worker testified that she was unable to verify that a mental health assessment had been completed or whether Doe had ever engaged in treatment because Doe never signed a release of information for her mental health treatment.

The case plan also required Doe to allow the social workers to have access to her home so they could determine if the home met the necessary requirements for the safety of the children. The plan also prohibited Doe from allowing individuals who were involved in drug and criminal activity to live in or frequent her home. A social worker testified that she once scheduled a face-to-face home visit with Doe, but Doe was not home when the social worker arrived for the scheduled appointment. The social worker also testified that she made some unannounced stops at Doe's house, but that no one answered the door despite her suspicion that someone was home at the time.

6

Finally, the case plan also required Doe to participate in weekly visitation with her children. The children's first foster mother testified that Doe made only three visits in the nine months the children were in her care. The safety assessor testified that the first visitation occurred after the adjudicatory hearing but before the case plan hearing. The social worker testified that the Department established a visitation schedule for Doe to attend weekly visits with the children every Monday. The social worker testified that one visit occurred after the case plan hearing but before she had taken over the case from a prior social worker. She also testified that only one visit occurred in the time since she had taken over the case. She testified that Doe's last face-to-face visit with the children occurred in April 2017, more than a year before the termination trial. Additionally, the second foster mother, who lives in Missouri, testified that the children came into her care in August 2017, approximately four months after the last face-to-face visit. She also testified that in the ten intervening months between August 2017 and the termination trial, Doe only participated in seventeen out of forty-one possible phone visits with the children. Accordingly, substantial and competent evidence from the record supports the magistrate's determination that Doe neglected her children by failing to comply with the case plan.

### 2. I.C. § 16-2002(3)(a)

Idaho Code § 16-1602(31) defines the conduct that constitutes neglect under I.C. § 16-2002(3)(a). Section 16-1602(31) states in relevant part:

> "Neglected" means a child:
> (a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them; . . . or
> (b) Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being;

Substantial and competent evidence supports the magistrate's finding that Doe failed to provide proper care, control, subsistence, medical care, and other care necessary for the children's well-being. Substantial and competent evidence also supports the magistrate's finding that Doe failed to discharge her responsibilities as a parent resulting in a lack of parental care necessary for the children's health, safety, and well-being.

The children's first foster mother testified that when the children were placed in her care DS was thin, pale, dirty, had a bad odor, and DS's clothes were too small. She testified that DS

was below target weight, had an iron deficiency due to lack of a varied diet, and would only drink milk which resulted in pure white stools. She also testified that DS would eat past satiation into illness, if allowed, as if it was the last time he would have a chance to eat. She testified further that DS exhibited self-harm behaviors including punching himself and calling himself a bad boy. She testified that DS would mimic smoking and blowing smoke in other people's faces. She also testified that DS had severe speech deficiencies that required his enrollment in speech therapy and an individualized education program.

Furthermore, the safety assessor testified that she was unable to find Doe for the first thirty days after PM was released from the hospital. She testified that the first contact she had with Doe after the children's removal was approximately one month later at the adjudicatory hearing. She also testified that Doe did not make any effort to have contact with the children or even inquire about their welfare during that same period of time. Additionally, the safety assessor testified that she informed Doe at the adjudicatory hearing that a family group decision making session was to be held at the courthouse, just two blocks from Doe's residence. The safety assessor testified she told Doe the specific date of the meeting, but Doe did not attend.

Finally, the record is clear that during the eighteen months in which the children were in the Department's custody, Doe did nothing to demonstrate she had made the necessary changes to provide proper parental care and control, safety, subsistence, or medical care needed for the children's well-being. Accordingly, substantial and competent evidence also supports the magistrate's determination that Doe neglected her children under I.C. § 16-1602(31).

## B. Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding

that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate found that terminating the parent-child relationship was in the best interests of the children. The magistrate cited the following factors in support of this finding: Doe had not established a bond with the children; Doe failed to complete virtually every task in the case plan; Doe failed to resolve concerns about her home being used as a revolving door for drug users; Doe failed to address safety concerns arising from her mental illness; Doe failed to resolve concerns about her drug use; Doe was facing felony drug charges; Doe had not shown sufficient income to adequately support the children; Doe failed to show any ability to serve as a parent; Doe failed to show she is capable of providing a safe, stable home according to the children's needs; and the children's condition dramatically improved in foster care.

A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Because Doe does not articulate any express challenge to the magistrate's best interests finding, she has waived this issue on appeal. However, even if we consider the arguments Doe made in relation to the magistrate's neglect finding in support of any challenge to the best interests determination, these arguments do not demonstrate error. Additionally, substantial and competent evidence supports the magistrate's finding that termination of Doe's parental rights is in the best interests of the children.

The testimony of the social workers, the guardian ad litem, and the foster parents all support the magistrate's conclusion that termination of Doe's parental rights is in the children's best interests. The testimony in the record reveals that Doe admitted to the Department that she had substance abuse issues and that her home was a revolving door for people to come to use drugs. Indeed, just one week before the termination trial Doe was in jail facing charges of possession of methamphetamine. There is no evidence in the record that her drug issues had been resolved. Likewise, Doe made no attempt to show the Department that she had a stable home or that she had completed treatment for her mental health. Most significantly, the nutritional, emotional, mental, and medical aspects of the children's lives improved markedly while in foster care. Accordingly, substantial and competent evidence supports the magistrate's finding that termination of the parent-child relationship is in the best interests of the children.

9

**C.     ICWA**

Doe argues the magistrate erred by rejecting her argument that the State failed to prove that the ICWA did not apply in this case. Doe further argues that the State has an affirmative duty, pursuant to 25 Code of Federal Regulations § 23.107(a), to supply testimony or evidence as to the efforts made to determine if ICWA applied to this case. The State argues that Doe did not offer any authority or cogent argument in support of her claim. The State also argues it did not have an affirmative duty to prove at trial that the children are not Indian children. We agree.

The ICWA only applies if the "court knows or has reason to know that an Indian child is involved" in the proceedings. 25 U.S.C. § 1912(a) (2018). There is no evidence in the record that Doe provided any information whatsoever about the children's potential Indian heritage. Absent Doe providing such information to the Department, there was no basis on which to require the Department to supply testimony or evidence as to efforts made to determine if ICWA applied to this case. Likewise, there was no reason for the magistrate to believe that the children were enrolled members of an Indian tribe or even that they had a relationship to any Indian tribe. Accordingly, the magistrate did not err in rejecting Doe's argument with respect to ICWA because the trial court had no reason to know that DS or PM are Indian children.

**D.     Improper Review of Documents**

Doe argues the magistrate improperly reviewed documents not admitted as evidence at the termination trial to influence the magistrate's decision. Specifically, Doe points to reports and minutes that the magistrate noted it would be reviewing for the limited purpose of confirming whether or not the parents received notice. The State argues that Doe's brief contains neither cogent argument with respect to the improper review of documents issue nor any authority to support it. We agree.

"Even in an appeal from the termination of parental rights, 'we will not consider an issue which is not supported by cogent argument and authority.'" *Idaho Dep't of Health & Welfare v. Doe*, 160 Idaho 824, 836, 379 P.3d 1094, 1106 (2016). Here, the entirety of Doe's argument with respect to this issue is contained in the heading to subpart 3 of the appellant's brief. The body of subpart 3 is devoid of any argument or citation. Doe has described what the magistrate did (e.g., look at reports and minutes for the limited purpose of confirming whether or not the parents received notice pursuant to the Department's request for the magistrate to take judicial notice of the court's file). However, Doe makes no cogent argument as to how the magistrate's

10

actions amount to error. Doe also failed to provide any supporting authority and even failed to cite to Rule of Evidence 201 which pertains to judicial notice. I.R.E. 201. Accordingly, Doe has waived this issue on appeal.

## III.

## CONCLUSION

Substantial and competent evidence supports the district court's findings that Doe neglected the children, and that it is in the children's best interests to terminate Doe's parental rights. The magistrate did not err in rejecting Doe's argument with respect to ICWA because the trial court had no reason to know that DS or PM are Indian children. Finally, Doe waived her argument that the magistrate improperly reviewed documents not admitted as evidence at the termination trial to influence its decision. Therefore, we affirm the judgment terminating Doe's parental rights.

Judge HUSKEY and Judge LORELLO **CONCUR**.