**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52752**

| | |
|---|---|
| In the Matter of: Jane Doe II,<br>A Child Under Eighteen (18) Years of Age. | ) ) |
| JOHN DOE and JANE DOE I,<br>Husband and Wife, | ) **Filed: October 10, 2025**<br>) |
| | ) **Melanie Gagnepain, Clerk** |
| Petitioners-Respondents, | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| v. | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| JANE DOE (2025-09), | ) |
| | ) |
| Respondent-Appellant. | ) |
| | ) |

Appeal from the Magistrate Division of the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. John C. Dewey, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Jolene C. Maloney, Boise, for appellant.

Pendlebury Law Office, PA; James A. Pendlebury, Idaho Falls, for respondents.

_____

TRIBE, Judge

Jane Doe (2025-09) appeals from the judgment terminating her parental rights. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe is the mother of Jane Doe II (Child), born in June 2016.[1] In March 2024, Doe's brother (John Doe) and his wife (Jane Doe I) filed a petition for termination of Doe's parental rights and adoption of Child. John Doe and Jane Doe I alleged that termination of Doe's parental rights is

---

[1]     Child's biological father is not listed on Child's birth certificate and is not a party to this case.

1

appropriate because Doe had "chronically abandoned and neglected" Child and is unable to discharge her parental responsibilities.

The magistrate court found that: (1) Doe has struggled with controlled substances and has relapsed after periods of sobriety; (2) Doe completed drug treatment in December 2023 but relapsed thereafter; (3) when Child was in Doe's custody, Child was sexually abused by the father of a teenager whom Doe allowed Child to spend the night with; (4) while in Doe's custody, Child only attended 50 out of 140 days of school, which required Child to repeat her kindergarten year; and; (5) there was no evidence that, while in Doe's custody, Child went hungry or lacked shelter.

Doe lived in a home with her boyfriend and Child. By working as a food delivery driver, Doe can earn between $300-$500 per week; however, because Doe does not work consistently, the amount is inconsistent. In summer 2022, Doe, along with Child, moved in with John Doe (Doe's brother) and Jane Doe I (John Doe's wife); Doe's boyfriend moved in later. After some time, Doe was hospitalized for four weeks with an illness. Child, along with Doe's boyfriend, remained in the home of John Doe and Jane Doe I. In October 2022, Doe and John Doe had an argument about Child. Doe left town and left her boyfriend and Child at John Doe and Jane Doe I's home. Shortly thereafter, Doe's boyfriend also left the home leaving Child with John Doe and Jane Doe I.

John Doe and Jane Doe I took Child on a trip to Disneyland and returned in mid-November 2022. On November 23, 2022, Doe told Jane Doe I that she wanted to pick up Child but Jane Doe I informed Doe that they were out of town. John Doe and Jane Doe I moved for, and were granted, temporary guardianship of Child. Because Doe failed to respond to the temporary guardianship, default was entered against her and permanent guardianship of Child was granted to John Doe and Jane Doe I. John Doe and Jane Doe I facilitated telephone contact between Doe and Child but this ceased in April 2023 because John Doe and Jane Doe I found Child struggled emotionally and behaviorally after the phone calls. In June 2023, Doe filed a petition to terminate the guardianship but failed to appear for the hearing; in August 2023, Doe filed another petition to terminate the guardianship but again failed to appear for the hearing. In September 2023, Jane Doe I obtained a civil protection order against Doe, which expired in September 2024; the order did not list John Doe or Child as protected parties. Doe contacted a

2

half-brother regarding visitation with Child but was told to contact John Doe and Jane Doe I. John Doe and Jane Doe I moved to terminate Doe's parental rights and adopt Child.

The magistrate court held a termination hearing in February 2025. The magistrate court found that Doe abandoned Child--a statutory basis for termination under Idaho Code § 16-2005(1)(a).[2] The magistrate court also found it is in Child's best interests to terminate Doe's parental rights and entered an order doing so. Doe appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated.

---

[2] Since the filing of the petition, I.C. § 16-2005 has been amended. The relevant substance has remained unchanged; however, subsection (1)(a) is now I.C. § 16-2005(1)(a)(i). *See* 2025 Idaho Sess. Laws, ch. 130 at 679.

*Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

### III.

### ANALYSIS

Doe argues that the magistrate court erred in finding that she willfully failed to maintain a normal relationship with Child because the lack of communication was caused by John Doe and Jane Doe I. John Doe and Jane Doe I argue that Doe abandoned Child before they impeded any communication and that Doe did not restart communication with Child.

### A.     Abandonment

In this case, the magistrate court terminated Doe's parental rights on the ground of abandonment, I.C. § 16-2005(1)(a). Pursuant to I.C. § 16-2002(5), abandonment occurs when the parent has willfully failed to maintain a normal parental relationship, including, but not limited to, "reasonable support *or* regular personal contact." *Doe I v. Doe II*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010) (emphasis added). The word "or" is a disjunctive particle used to express an alternative and, thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support or the failure to have regular personal contact or some other failure. *Id.*

4

When a parent fails to maintain a normal parental relationship without just cause for a period of one year, prima facie evidence of abandonment exists. I.C. § 16-2002(5). There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *Doe I v. Doe II*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The petitioner bears the burden of persuasion to demonstrate that the parent lacks a normal parental relationship with the child and that there is no just cause for the failure to maintain such a relationship. *Id.* If the petitioner is able to meet this burden, the parent then has the burden of production to present evidence of just cause. *Id.* If the magistrate court finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.*

Doe argues that, while she could have done more to maintain a normal parental relationship, the magistrate court's finding that she willfully abandoned Child is not supported by substantial and competent evidence. Doe asserts that this is not a case of abandonment but about different understandings of events between herself and John Doe and Jane Doe I. For example, Doe asserts that, after the argument with John Doe in October 2022, she left Child at John Doe and Jane Doe I's home because the parties agreed that Child would stay with them to go on a trip to Disneyland. However, John Doe and Jane Doe I assert that this was never discussed as a reason for leaving Child with them. Additionally, Doe asserts that she did not contact Child after the civil protection order was entered because she believed that she could not contact Jane Doe I (the protected party), or anyone else in the household (including John Doe or Child), even though legally she could. Finally, Doe asserts that she sent presents and $500 that were to be delivered to Child, but John Doe and Jane Doe I testified that they never received the items.

Doe compares this case with our unpublished opinion--*In re Doe*, Docket No. 51996 (Ct. App. March 14, 2025). In this opinion, Doe attempted to contact her children through phone calls and letters but was kept from contacting the children due to the children's father deciding that communication is not in the children's best interests. We held that a guardian cannot keep a parent from talking to a child by declining to accept phone calls for the child, then use that time of non-communication as grounds to terminate the parent's parental rights. Similarly, here, Doe argues that, because John Doe and Jane Doe I kept Doe from communicating with Child, that time should not count against her. The evidence was that John Doe and Jane Doe I no longer permitted

5

telephone calls between Doe and Child because Child exhibited troubling behavior after the calls. Jane Doe I testified that, after that, she never discussed with Doe about renewing communication with Child. Doe did not establish that she made any attempt to communicate with Child after John Doe and Jane Doe I told her that she would not be permitted to have phone calls with Child. There was testimony that Doe made attempts to establish visitation with Child by seeking help from a half-brother who told Doe that she needed to contact John Doe and Jane Doe I. Doe asserts that she never stopped trying to contact Child. However, Jane Doe I testified that Doe continued to occasionally text Jane Doe I after she and John Doe decided to stop telephone calls between Doe and Child. In those text messages, there was no reference to Doe trying to talk to Child or set up visitation. Rather, Jane Doe I testified that these text messages were harassing, which prompted Jane Doe I to obtain the civil protection order against Doe. The civil protection order expired in September 2024, and Doe made no attempts to see or communicate with Child thereafter. Doe also references two pro se filings for termination of the guardianship as evidence that she tried to regain custody of Child; however, Doe failed to appear at the hearings. At the termination hearing, Doe asserted that John Doe blocked her on Facebook and changed his phone number; John Doe testified that he has the same phone number and has never blocked Doe from contacting him on that number. Further, while Doe was not legally able to communicate with Jane Doe I for a year, she could have contacted John Doe to request communication with Child.

The magistrate court considered all the conflicting evidence and determined that Doe abandoned Child. On appeal, Doe provides no reason, other than misunderstanding the civil protection order and being blocked on Facebook, that she could not call or text John Doe to seek communication with Child. Further, when asked whether Doe read the petition for the civil protection order when it was served on her, Doe testified, "No, I didn't."

Doe asserts that "the magistrate court downplayed [her] efforts to stay in contact with Child and failed to acknowledge evidence regarding the various obstacles that prevented" Doe from maintaining a normal parental relationship with Child. However, even if this Court were not persuaded that Doe willfully failed to maintain regular personal contact with Child, we would still hold that the magistrate court did not err in finding Doe failed to provide reasonable support to Child during the year prior to the petition date.

The magistrate court's findings of fact show it considered Doe's financial status by determining that she could make up to $500 per week as a food delivery driver but that she does not deliver food every week. Doe's testimony also does not support her claim that her financial hardship was not willful. Doe testified that whether she delivers food "depends on the day, if I want to go out and, you know, work." Doe testified that, when her car is not working, she can use her friend's car to work. When asked if her health allows her to work every day, Doe testified, "Yeah, I could if I wanted to." Doe also testified that she has not had any other employment besides working as a food delivery driver since 2018 and that she does not work every month because she's "just not interested." When asked if Doe goes through periods of time without working due to her depression, she responded, "Well, it's not that I can't. I guess if I really worked at it, I could."

When asked whether Doe provided any money for Child over the last three years, Doe testified that she gave her mother $500 to give to Child in 2023 (a year and a half before the termination hearing). She also testified to buying presents for Child for Christmas and Child's birthday. However, Jane Doe I testified that, while Doe provided Child with presents before March 2023, no presents have been received in the time between then and the date of the termination hearing in February 2025. Jane Doe I also testified that Doe has not provided any money, other than rent money in 2022, for Child. A finding of abandonment requires a failure to maintain the relationship without just cause for a period of one year. I.C. § 16-2002(5). Doe does not point this Court to any evidence showing that she provided financial support or presents to Child since March 2023. Therefore, the magistrate court had substantial and competent evidence to find Doe abandoned Child.

B.    Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's

efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court considered that John Doe and Jane Doe I live in a home that is big enough for Child to have her own room; are able to provide emotional, financial, and educational support for Child; and have attended to Child's medical and educational needs. The magistrate court considered that Doe has stable housing but that it is not a clean home. Additionally, the magistrate court considered that Doe only works occasionally, which causes her to have limited financial means. The magistrate court considered that Doe did not meet Child's educational needs causing Child to have to repeat a grade level. The magistrate court also considered Doe's patterns of relapse of drug use and her testimony regarding that she does not know "what school [Child] attends, what grade she is in, who her friends are, or how she is doing."

Doe argues that John Doe was "personally disgusted" with Doe's home compared with his own. Doe argues that she should not be punished because she cannot afford a home as nice as John Doe's. However, the magistrate court did not compare Doe's home to John Doe's. Rather, the magistrate court found that Doe had stable housing but that the home was not clean.

Further, Doe argues that the magistrate court misunderstands the nature of addiction because its finding, that Doe's "ongoing struggle with addiction creates instability," either reflects an expectation for Doe to have been sober by the termination hearing or that Doe is using drugs rather than being in active recovery from her addiction (with eleven months of sobriety). However, the sentence immediately preceding the finding, that Doe's "ongoing struggle with addition creates instability," makes it clear that the magistrate court considered that Doe "has a long history of methamphetamine use, periods of abstinence, and periods of relapse."

"Whether a matter has been proved by clear and convincing evidence is primarily a matter for the trial court." *In re Doe*, 153 Idaho 258, 263, 281 P.3d 95, 100 (2012). "On appeal, the appellate court does not reweigh the evidence to determine if it was clear and convincing." *Dep't. of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010). The magistrate court found that John Doe and Jane Doe I proved by clear and convincing evidence that termination of

Doe's parental rights is in the best interests of Child. That finding is supported by substantial and competent evidence in the record.

## IV.
## CONCLUSION

Doe has failed to show that the magistrate court erred in finding that she abandoned Child. Doe has also failed to show that the magistrate court erred in finding that it is in Child's best interests to terminate Doe's parental rights. The judgment terminating Doe's parental rights is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.